COMMONWEALTH *vs.* BESSIE T. SMITH.

Worcester. December 9, 1942. — December 28, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Attempt. Assault.*

Testimony by a woman, defendant at a criminal trial, that while conferring with a companion at a table she cocked a revolver in her hand bag, pulled the revolver from the bag and sprang from her chair intending to get far enough away from her companion so that he could not stop her from shooting herself, and that he was wounded by a shot from the revolver while attempting to disarm her, if believed, proved an attempt at suicide.

An assault and battery with a dangerous weapon by a defendant upon a companion would be shown if the companion was wounded by a shot from a revolver while endeavoring to prevent the defendant from committing suicide with the revolver.

INDICTMENT, found and returned on August 20, 1941.

The case was tried before *Donnelly*, J., and in this court was submitted on briefs.

*S. A. Murphy & F. M. Buzzell,* for the defendant.

*O. A. Hoban,* District Attorney, & *A. B. Cenedella,* Assistant District Attorney, for the Commonwealth.

RONAN, J. This is an appeal with an assignment of error based upon a single exception taken at a trial at which the defendant was found guilty of assault and battery with a dangerous weapon upon one Morse.

There was evidence that the relations of the defendant and Morse were friendly and intimate; that on the evening of June 12, 1940, she went to Morse's home and, in the presence of his wife, objected to Morse occupying the same room with his wife; that Morse told her that he would not see her again; that she declined to leave until he promised to meet her the next day at a bank with which he was connected as an official; that she was at the bank when he arrived next morning and Morse sat down at a table to confer with her; that she asked him whether his love for his wife meant more to him than his life and, in a few minutes after he replied that he would have to think it over, took a revolver out of her hand bag, "squared away" toward him as he quickly started for the door, and when he was nine or ten feet away pointed toward him and fired; that the bullet struck one of his fingers, glanced off his chin, and finally landed on his chest; that as he was leaving the room the defendant again fired and this time the bullet lodged in the wall. The defendant testified that after she talked with Morse concerning his affection for his wife and for her, she put her hand into a hand bag and cocked her revolver in order that she could quickly commit suicide; that she sprang out of her chair when she pulled out the revolver; that Morse divined her intention and shouted, "Don't do that," and she said, "I will"; that Morse then lunged toward her

to seize the revolver and prevent her from committing suicide, when the revolver was discharged; that she thought that he must have reached for the revolver as she felt sure that he intended to disarm her; and that all she intended to do was get far enough away from him so that he could not stop her from shooting herself. She testified that she fired the second shot in an effort to take her life.

The judge instructed the jury that if they believed that she was engaged in an attempt to commit suicide and that Morse was injured in endeavoring to prevent her from doing so, then the defendant was guilty of an assault and battery upon him with a dangerous weapon. The defendant, who filed no requests for rulings, objected to this portion of the charge. She requested the judge to instruct the jury as to what would constitute an attempt, and have them decide whether the defendant was actually attempting to commit suicide when Morse was shot, or whether the acts of the defendant had not gone far enough to constitute an attempt, and whether the only attempt that the defendant made to take her life was at the time she fired the second shot. The defendant excepted to the failure of the judge to change the charge or to give the instructions requested.

Morse was not struck by the second shot, and whether the defendant was then endeavoring to end her life was not material as to whether what she then did was in fact an attempt to commit suicide. The only materiality of this incident was its bearing upon her conduct at the time she fired the first shot. According to her testimony, at the time Morse was shot she had in her hand a loaded revolver which she had cocked, and was unsuccessfully endeavoring to get far enough away from him to turn the revolver upon herself and end her life. She was bent on destroying her own life. She had made all the arrangements and was engaged in putting them into execution. She was engaged in the accomplishment of an unlawful purpose, and she had gone so far in realizing her object that it was reasonably probable that she would have succeeded if her efforts had not been frustrated by the intervention of Morse. Her conduct came so near the consummation of the offence that she contem-

plated, that the judge was right in submitting to the jury the question, whether she shot Morse with intent to murder him or whether he was shot while she was attempting to commit suicide. *Commonwealth* v. *Mink,* 123 Mass. 422. *McMahan* v. *State,* 168 Ala. 70. *State* v. *Carney,* 40 Vroom, 478. *State* v. *Levelle,* 34 S. C. 120. Compare *May* v. *Pennell,* 101 Maine, 516; *State* v. *Campbell,* 217 Iowa, 848.

The judge was also right in refusing to give the requested instructions, as there was no evidence that what the defendant was doing when the revolver was discharged and Morse was wounded was a mere matter of preparation. One struggling for an opportunity to level and fire a cocked revolver into her body has gone beyond the preparatory stages in a plan to commit suicide. *Commonwealth* v. *Kennedy,* 170 Mass. 18. *Commonwealth* v. *Peaslee,* 177 Mass. 267. *People* v. *Sullivan,* 173 N. Y. 122. *People* v. *Mills,* 178 N. Y. 274. *People* v. *Rizzo,* 246 N. Y. 334. *Lee* v. *Commonwealth,* 144 Va. 594.

*Judgment affirmed.*