Fábricant, Judith, J.
INTRODUCTION
This action arises from a dispute between Harold Wenger and his former attorney, Gregory J. Aceto. Wenger’s three-count complaint against Aceto alleges malicious prosecution, abuse of process, and violation of G.L.c. 93A. Before the Court is Aceto’s special motion to dismiss pursuant to G.L.c. 231, §59H, the “Anti-SLAPP” statute; Aceto contends that Wenger’s action is intended as retribution for Aceto’s application for a criminal complaint against Wenger. For the reasons that will be explained, Aceto’s motion will be denied.
BACKGROUND
The following factual background derives primarily from evidence presented at a hearing before a clerk-magistrate on Aceto’s application for a criminal complaint against Wenger, a transcript of which has been provided. Aceto, an attorney, represented Wenger, a physician, in various litigation matters between 1997 and 2005. One litigation matter resulted in a substantial verdict against Wenger, leaving him dissatisfied with Aceto’s services. Wenger obtained new counsel, who succeeded in obtaining a much more favorable judgment notwithstanding the verdict in that matter.
As of October 1994, Wenger had an outstanding balance on his account with Aceto’s firm of some $45,000. Wenger delivered to Aceto a check in the amount of $10,000.[1] Aceto placed the check in his briefcase and left the briefcase in his car, from which it was stolen.[2] Aceto contacted Wenger to obtain a replacement cheek. Wenger stopped payment on the previous check and, in January 2005, provided Aceto with another check for $10,000. When Aceto attempted to deposit the check in his bank account, the bank returned it marked “insufficient funds.”[3] Aceto informed Wenger that his check had been dishonored, and Wenger assured Aceto that he would deliver a new check.
On January 12, 2006, Aceto sent Wenger a formal written demand for payment via certified mail, return receipt requested, which Wenger refused to accept. On February 3, 2006, Aceto hand-delivered a demand letter to Wenger, threatening criminal prosecution if Wenger did not pay. On February 8, 2006, Wenger’s new counsel faxed a letter to Aceto informing him that Wenger would be asserting claims of legal malpractice against Aceto. Two days later, on February 10, 2006, Aceto filed in the Dedham District Court an application for a criminal complaint against Wenger for larceny by check in violation of G.L.c. 266, §37.[4]
On April 11, 2006, after an extensive evidentiary hearing at which both both Wenger and Aceto were represented by counsel, the Clerk Magistrate of the Dedham District Court denied the application. The presiding judge of the Dedham District Court affirmed that decision. Three months later, on July 14, 2006, Wenger filed this action against Aceto, alleging malicious prosecution and abuse of process. On August 11, 2006, Wenger amended his complaint to add a count alleging violation of G.L.c. 93A. Aceto has moved to dismiss all counts, contending that Wenger has brought this action “solely for the purpose of retaliating against him for exercising his constitutional right of petition.”
DISCUSSION
1. Standard
The Anti-SLAPP statute, G.L.c. 231, §59H, states:
In any case in which a party asserts that the civil claims . . . against said party are based on its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss ... The court shall grant such special motion, unless the party against whom such special motion is made shows that (1) the moving party’s exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party’s act caused actual injury to the responding party.
The purpose of the statute is to provide “broad protection for individuals who exercise their right to petition from harassing litigation and the costs and burdens of defending against retaliatory lawsuits.” Fabre v. Walton, 436 Mass. 517, 520 (2002).
To succeed on a special motion to dismiss under the anti-SLAPP statute, the moving party must make a threshold showing that the claims against it are based on petitioning activities alone “and have no substantial basis other than or in addition to the petitioning activities.” Baker v. Parsons, 434 Mass. 543, 550 (2001). If the conduct that is the subject of the lawsuit involves both petitioning and activity *82 which could not be considered petitioning, the special motion to dismiss must be denied. See Garabedian v. Westland, 59 Mass.App.Ct. 427, 433 (2003); Ayasli v. Armstrong, 56 Mass.App.Ct. 740, 748 (2002). The Court must examine each count in a complaint to determine whether it is based solely on petitioning activity. See Adams v. Whitman, 62 Mass.App.Ct. 850, 858 (2005).
Once the moving party establishes that the claims against it are based solely on petitioning activity, the burden shifts to the non-moving party to show by a preponderance of the evidence (1) that the moving party’s petitioning activity was devoid of any reasonable factual support or arguable basis in law, and (2) that the moving party’s activities caused actual injury to the responding party. See G.L.c. 231, §59H, Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 167-68 (1998). The fact that the underlying petitioning activity is unsuccessful does not in itself mean that the petitioning activity lacked an “arguable basis in law.” See Donovan v. Gardner, 50 Mass.App.Ct. 595, 599 (2000).
2.Petitioning Activity
Aceto must establish that Wenger’s claims against him are based solely on his petitioning activity, namely, his filing of an application for a criminal complaint against Wenger.[5] As to the two original counts, claiming malicious prosecution (Count I) and abuse of process (Count II), the answer is clear. Indeed, the amended complaint explicitly states that the claims arise “out of a criminal claim brought in the Dedham District Court.” Although the factual allegations of the amended complaint include allegations of various failures and misdeeds in the provision of legal services, those allegations háve no apparent relationship to the claims pled in counts I and II. Those counts, as pled, rest entirely on the application for criminal complaint. Aceto has therefore satisfied his initial burden with respect to counts I and II.
The issue is more difficult with respect to the c. 93A claim (Count III). That claim includes allegations regarding the application for criminal complaint, and indeed those allegations appear to be at the heart of the claim. But the claim also includes allegations of various kinds of misconduct in connection with the provision of legal services, statements made to induce Wenger to engage Aceto’s services, and charges for those services. Although review of the allegations in the factual context presented gives rise to a strong suspicion that the application for criminal compliant is the primary, if not the sole, motivation for Wenger’s suit, the Court cannot conclude at this stage that the c. 93A claim is based solely on that activity. Accordingly, the motion must be denied as to count III on that ground.
3.The Basis for Aceto’s Petitioning Activity
As Aceto has met his initial burden of showing that Wenger’s malicious prosecution and abuse of process claims are based solely on petitioning activity, the burden now shifts to Wenger to establish that Aceto’s filing of an application for criminal complaint was “devoid of any reasonable factual support or arguable basis in law.” Duracraft Corp., 427 Mass. at 168. Aceto based his application on the theory that Wenger committed the crime of larceny by check, or attempted larceny, in violation of G.L.c. 266, §37. He points to Wenger’s failure to provide prompt replacement of the check, after notice of its dishonor, as evidence that Wenger knew the check was bad when he delivered it.
The gap in Aceto’s theory is that c. 266, §37, does not render the knowing passing of a bad check a crime in and of itself. The crime, rather, is larceny, or attempted larceny, effected by means of passing a bad check. For a larceny to occur, one must obtain something of value by the prohibited means; an attempted larceny requires an attempt to obtain something of value. Thus, for the passing of a bad check to constitute a crime under c. 266, §37, the person charged must have attempted to or actually obtained something of value by means of passing the bad check. Here, Wenger gave Aceto the check in payment, or partial payment, of a debt for services provided in the past. He neither obtained nor attempted to obtain anything of value by delivering the check. Aceto was well aware of the facts, and was in a position to ascertain the law. The facts provided no reasonable basis for Aceto’s application for a criminal complaint.
4.Injury
Having established that Aceto’s petitioning activity had no reasonable basis, Wenger must now show that Aceto’s actions caused him actual injury. Wenger alleges that his reputation and feelings have been injured, but offers nothing to support that contention. The record does establish, however, that Wenger engaged counsel to represent him in connection with the application for criminal complaint, thereby incurring expenses for attorneys fees.
The question thus arises whether defense costs constitute injury for purposes of c. 231, §59H. The Appellate Division of the District Court has held that they do not, see Leslie v. Sciacca, 2003 Mass.App.Div. 68, while a judge of this Court has held that they do. See Duval v. Hallisey, Civil No. 0936B (Suffolk Super.Ct. March 16, 2004) (Velis, J.) [17 Mass. L. Rptr. 572]. Neither relies on any appellate authority, as it appears there is none under this statute.
The requirement that a plaintiff show actual injury to survive a special motion to dismiss serves to ensure that a case does not proceed for the sole purpose, and with the sole effect, of punishing or deterring protected petitioning activity. For that purpose, a showing of harm resulting in compensable damages should be sufficient. Here, the substantive claims pled are abuse of process and malicious prosecution. Defense costs are recoverable as damages for those torts. See M.F. Roach Co. v. Provincetown, 355 Mass. 371, 372 (1969) *83 (“While . . . counsel fees are not ordinarily collectible as an element of damage, the rule has its exception in the event of tortious conduct. . . requiring the victim of the tort to sue or defend ... in order to protect his rights”). See also Wheeler v. Hanson, 161 Mass. 370 (1894) (attorneys fees recoverable as damages in a malicious prosecution action). This Court therefore concludes that Wenger has met the requirement to show injury by showing that he incurred costs to defend the application for criminal complaint.
CONCLUSION AND ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s special motion to dismiss is DENIED.

The parties dispute the purpose of that check; Aceto contends it was partial payment on the account, while Wenger contends that the two had agreed to full settlement of the account for that amount, in light of Wenger’s dissatisfaction with Aceto’s services.

Wenger had written earlier checks for $10,000 to Aceto as well, and the evidence reveals some confusion as to exactly which check was in the stolen briefcase, and which Aceto negotiated. Uncontradicted evidence indicates that a $10,000 check from Wenger to Aceto was in the stolen briefcase and was never negotiated.

The bank has since acknowledged that that was its error; the account had sufficient funds, but the bank had applied ■the stop payment order to all checks in the amount of $10,000 drawn on the account. At the time, however, neither of the parties to this case knew of the error.

That statute provides:
Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft or order for payment of money upon any bank or other depositary, with knowledge that the maker or drawer has not sufficient funds or credit at such bank or other depositary for the payment of such instrument, although no express representation is made in reference thereto, shall be guilty of attempted larceny, and if money or property or services are obtained thereby shall be guilty of larceny.

Wenger does not dispute that the filing of an application for a criminal complaint constitutes petitioning activity.